### DAVID TUCKER *vs.* THE HOUSATONIC RAILROAD COMPANY AND OTHERS.

Goods were sent by a sealed railroad car to be delivered unbroken at the place of destination. The railroad company on the way opened the car and transferred the goods to another. The owner refused to receive them and brought trover. The judge charged the jury that "if a common carrier, when a car and contents are to be forwarded unopened, intentionally breaks the package and removes the goods, he is liable in trover to the owner for their value, less the charges upon them." Held to be erroneous. If the goods are removed for the convenience of the carrier, and are afterwards delivered without loss of quantity and without injury, the carrier would not be liable in trover.

TROVER for a quantity of oats, brought to the Court of Common Pleas for New Haven County. Verdict for the plaintiff and motion for a new trial by the defendant. The case is sufficiently stated in the opinion.

*A. L. Soule*, of Massachusetts, and *G. H. Hollister*, in support of the motion.

*H. B. Munson* and *Doolittle*, contra.

FOSTER, J. From the motion in this case it appears that the various connecting railroad companies, between Quincy, Illinois, *viâ* Chicago, and Bridgeport, in this state, had entered into a mutual arrangement by which each of said companies furnished a certain number of cars painted blue, known as " blue line cars," which were to be run over the respective roads of the said companies for the safe and speedy transmission of freight for long distances. The Housatonic Railroad Company, one of these defendants, was one of these railroad companies.

The plaintiff claimed to have proved that on repeated occasions, prior to the transaction now the subject of controversy, he had purchased oats in Chicago, procured them to be placed in a " blue line car," and had it sealed up and forwarded to him at Seymour, Connecticut, where it was received with seals unbroken. The bill of lading in each of these cases was similar, *mutatis mutandis*, to the one produced on trial.

The plaintiff further claimed to have proved that he purchased the oats which are the subject of this suit, and had them shipped in a blue line car, at Chicago, for Seymour, Connecticut, on the 11th of November, 1871. That after the oats had been shipped, and while they were in transit, a day or two before their arrival at Bridgeport, the plaintiff hearing that the other defendants, in connection with the railroad company, had recently erected an elevator and insisted upon placing all oats received at Bridgeport in the elevator, called on the railroad agent in Bridgeport, and remonstrated against their opening the car, or removing the oats and placing them

in the elevator. That he also notified the company that if they would not send the car forward according to contract, the Naugatuck Railroad Company would receive the oats in the blue line car, and unload them into one of their own cars, and that, in no event, would he, the plaintiff, permit the Housatonic Railroad Company to open the sealed blue line car, and place the oats on the elevator, but expressly forbade the same. That said blue line car, with said oats, arrived at Bridgeport by the Housatonic road, about twelve o'clock at night, and at an early hour the next morning, being the 21st of November, 1871, the agent of the Naugatuck Railroad Company called on the Housatonic Railroad Company to receive said car and oats, and was informed that the oats had already been elevated, and were then on Crane & Hurd's, (two of the defendants) elevator.

The defendants claimed to have proved that the same oats, which were in the blue line car on its arrival at Bridgeport, had been elevated, and sent in a Naugatuck car to Seymour, and that they had been directed by the managers of the blue line not to send any blue line cars beyond Bridgeport.

The plaintiff refused to receive the car of oats thus sent, claiming that they were not the oats that he purchased at Chicago, and which were shipped in said blue line car, but that they had been changed, and were damaged and rejected oats.

Several questions were discussed in the court below which it is not now necessary to decide. Certain testimony of the defendants, which was at first ruled out, was finally admitted. There is one ground however on which the defendants are entitled to a new trial. The court charged the jury that "if the common carrier, when car and contents are to be forwarded unopened, breaks intentionally the package, and removes the goods, he is liable in trover to the owner for the value of the goods, less the charges upon them." We think this doctrine cannot be sustained. As applied to the case at bar, it would make the defendants liable in this action for the value of these oats, if they simply transferred them from one car to another, and then forwarded them to Seymour, with-

out loss and without injury. Such is not the law. If the arrangement between the parties was such that the plaintiff was entitled to have his oats go through in the blue car, and we incline to that opinion, though it is not necessary to decide this point, a change of the property from that to another car, for the convenience of the defendants, would not be a conversion of the property, and would not render them liable in trover. If the same oats, with no loss in quantity, and no injury to the quality, were then forwarded and delivered at the place of destination, surely the action of trover would not lie.

A new trial is therefore advised.

In this opinion the other judges concurred.